## JAMES HARTNESS vs. THE GREAT WESTERN RAILWAY COMPANY OF CANADA.

Plaintiff shipped certain goods by G. W. Railway from Detroit to New York City, the price for the whole service being agreed upon by plaintiff and company, and at the same time, plaintiff signed an agreement with the company that the latter would not be liable for loss of market or other claims, arising from delay or detention, on the journey, under any circumstances. The goods were detained at Suspension Bridge, the N. Y. Central Company refusing to receive them ; whereupon suit was brought by plaintiff to recover damages.

*Held,* That the responsibility of the common carrier to convey the property, as agreed, to its destination, having undertaken to do so, and fixed the price for the service, may be waived by the consignor, and the common liability may be waived by a clear and distinct agreement. And when a person making a contract actually signs a paper referring in plain terms to a condition on the back of the paper itself, and a like one is at the same time delivered to him, the law presumes that he understands and assents to each and every condition contained therein.

This is an action against the railway company for damages occasioned by the delay of freight in transit from Detroit to New York.

The case was tried by a jury, and a special verdict rendered.

The special verdict sets forth that in December, 1864, and January 1865, the plaintiff delivered to the defendants at Detroit, certain goods to be sent over their road to New York City ; that the charge agreed upon was seventy-five cents per hundred for the entire distance; that at each shipment of goods the defendants gave to plaintiff a receipt or shipping note containing the following : " Received from James Hartness, the undermentioned property, to be sent by the Great Western Railway Company, subject to their tariff, and under the conditions stated on the other side," and signed by the agent of the company. At the same time the plaintiff executed and delivered to the defendants a paper or order, signed by him, containing the following : " The Great Western Railway Company will please receive the undermentioned property directed to Colgate & Co., New York, to be sent subject to their tariff, and under the conditions stated on the other side." The conditions above referred to were not as a matter of fact actually read by the plaintiff. It appears further that the delay was occasioned by the refusal of the New York Central Railroad Company to receive the goods at Sus-

pension Bridge, after they had passed over the defendant's road, and forward them to their destination, the defendants having no business relations with said road.

It is conceded that, if the conditions on the back of the papers above referred to are binding, then the defendants are not liable in this action for the delay at Suspension Bridge, one of the conditions being that they will not under any circumstance be liable for loss of market or other claims arising from delay or detention of any train, whether in starting or at any of the stations or in the course of the journey.

*D. C. Holbrook*, Attorney for Plaintiff.

*T. Romeyn*, Attorney far Defendants.

*By the Court*, PATCHIN, J.—The relation of common carriers to the public is one of the most important as well as interesting subjects with which the judiciary have to do.

The question is very fully discussed by the Supreme Court of this State in 16 *Mich.*, 79. The question there discussed whether the nature of the business done, or the person doing it, gives character to warehousing, does not, however, arise in this case.

Common carriers, when they become such, assume certain relations to the public that they cannot dispense with except by the consent of the parties interested; and, indeed, by the laws of 1867, page 165, only when consent is given in a certain manner.

In the case above referred to, 16 *Mich.*, 111, it is said that " subject to reasonable regulations, every man has a right to insist that his property, if of such description as the carrier assumes to convey, shall be transported subject to the common liability."

Whether it is the policy of the law to protect a man against his own acts, by prohibiting his entering into a contract, although fully and fairly understood by him, not because he may thereby injure his fellow men, but only for the reason that in the opinion of the law maker it would not be for his interest to make such a contract, may well be questioned.

It has generally been supposed that the great object of governments and law is to protect the citizens in such undertaking as to his own judgment may seem best, subject only to such restriction as will fully prevent his neighbor's interest from being in the least affected.

The presumption of law is, that every one understands its provisions, and ignorance in that regard cannot be pleaded in law. It would seem that a degree of intelligence that would enable a person to understand intricate questions of law would be quite sufficient to protect him against the evil consequences of his own contracts, especially when it is remembered that those who have to do with common carriers are in almost every instance men of large experience, who would hardly admit that they require the protection of the law against their own acts. How successful the law makers will be in this respect remains to be seen.

It is claimed, on the part of the plaintiffs, that in fixing the price to be paid for the entire distance, the defendant thereby became responsible; but it can hardly be said that that responsibility cannot be waived by a clear and distinct agreement. I cannot avoid the conclusion that where (as in the case at bar) a person making a contract actually signs a paper referring in plain terms to a condition on the back of the paper itself, and another one containing the same conditions is delivered to him at the same time, and this continuing through several transactions with precisely the same papers in each, then the law presumes that he understands and assents to each and every condition contained therein.

It follows, therefore, that the contract made by the plaintiff is binding, and he cannot recover in this action for any damages sustained which were expressly waived by his contract. The judgment on the special verdict must be for the defendant.